Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL II**

| | | |
|---|---|---|
| Lillibeth Piñeiro Díaz<br><br>Recurrente<br><br>vs.<br><br>Consejo Titulares Condominio La Cima Apartments<br><br>Recurridos | TA2026RA00260 | **REVISIÓN ADMINISTRATIVA** procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: C-CAG-2025-0007110<br><br>Sobre: Ley de Condominios de P.R., Ley Núm. 129 de 16 de agosto de 2020, según enmendada. |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante este foro revisor, la Sra. Lillibeth Piñeiro Díaz (señora Piñeiro Díaz o parte recurrente) mediante *Revisión Administrativa* y nos solicita que revoquemos la *Resolución* emitida el 24 de marzo de 2026 por el Departamento de Asuntos del Consumidor (DACo). Mediante el referido dictamen, el foro administrativo declaró *No Ha Lugar* a la *Querella* instada por la señora Piñeiro Díaz e impuso una sanción de $500.00 por concepto de temeridad.

Por los fundamentos que expondremos a continuación, se confirma la determinación recurrida.

### I.

Según surge del expediente, el caso de autos se originó el 27 de junio de 2025, cuando la señora Piñeiro Díaz instó una *Querella* en contra de la Junta de Titulares de La Cima Apartments (Junta de

Directores), al amparo de la Ley 129 de 16 de agosto de 2020, según enmendada, conocida como la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1291 *et seq.* (Ley de Condominios).

Surge de las alegaciones que, la controversia tiene su trasfondo en tres querellas previas relacionadas con la alegada falta de traspaso del proyecto por parte del desarrollador, conforme a las leyes y reglamentos aplicables. Dichos procedimientos culminaron con una adjudicación en los méritos a favor de los querellantes, mediante la cual se ordenó al desarrollador y propietario del proyecto, efectuar el traspaso correspondiente y garantizar el respeto de los derechos de los condóminos.

La señora Piñeiro Díaz alegó que, mientras permanecían pendientes diversas actuaciones ante el DACo, varias personas se organizaron para convocar la constitución de una Junta de Directores. Sostuvo que dicha convocatoria no podía efectuarse, por entender que previamente debía intervenir el DACo. Añadió que, la Junta de Titulares así constituida convocó una reunión el 23 de febrero de 2025, acompañó dicha convocatoria con documentos y una agenda que calificó como ilegales, por incumplir con las disposiciones legales aplicables. Indicó además que, impugnó dicha convocatoria y que posteriormente se emitió una nueva convocatoria para una reunión pautada para el 18 de mayo de 2025.

En consecuencia, la señora Piñeiro Díaz impugnó dichas convocatorias y asambleas, alegando que la Junta de Directores pretendía alterar disposiciones relativas a la ubicación de estacionamientos, así como modificar la configuración física del condominio y sus escrituras. De igual forma, alegó que la Junta de Directores incumplió con los requisitos legales relacionados con las notificaciones, la redacción de minutas, los anuncios de participación y votación, así como con el mantenimiento de un registro actualizado de titulares, entre otros aspectos. Por ello,

solicitó al foro administrativo que decretara la nulidad de la Junta de Directores constituida y, en consecuencia, revocara todos sus actos por alegado incumplimiento de la Ley de Condominios, *supra*.

El 23 de julio de 2025, la señora Piñeiro Díaz presentó una *Moción Solicitando Anotación de Rebeldía*.

Luego, el 13 de agosto de 2025, el DACo notificó a las partes una *Citación a Sesión de Mediación* para el 27 de agosto de 2025, en la Oficina Regional de Caguas en la División de Mediación.

El 19 de agosto de 2025, la señora Piñeiro Díaz presentó una *Solicitud de Impugnación de Proceso de Mediación y Moción Reiterando Solicitud de Anotación de Rebeldía Moción Solicitando Inhibición y Descalificación de Mediador y Personal del DACO que ha Tenido Comunicación con las Partes de Manera Ilegal, Contra Ética de Abogados y de Manera que Lleva Influencia Indebida*. Sostuvo que, previo a la orden de mediación, había solicitado la anotación de rebeldía y cuestionó la autoridad del DACo para celebrar una vista de mediación, así como señaló que el referido era arbitrario.[1]

Posteriormente, el 22 de agosto de 2025, la Junta de Titulares presentó su *Contestación Formal a la Querella*. En síntesis, sostuvo que en la asamblea celebrada el 23 de febrero de 2025 se eligieron los miembros de la Junta de Titulares conforme al Reglamento del Condominio y que las decisiones adoptadas siguieron el procedimiento parlamentario aplicable. Asimismo, negó haber realizado modificaciones al diseño original del condominio y afirmó que las tareas efectuadas correspondían a trabajos de mantenimiento. En consecuencia, solicitó que se declarara *no ha lugar* a la querella y se reconociera la validez de la Junta de Directores electa el 23 de febrero de 2025.

---

[1] En atención a ello, el 22 de agosto de 2025, el foro administrativo emitió una *Orden* dejando sin efecto la Vista de Mediación señalada para el 27 de agosto de 2025.

El 2 de septiembre de 2025, la señora Piñeiro Díaz presentó una *Tercera Moción Reiterando Solicitud de Anotación de Rebeldía.* Arguyó que, la contestación a la querella no le fue notificada conforme a los requisitos reglamentarios del DACo y reiteró su petición de que se anotara la rebeldía a la Junta de Titulares.

En atención a ello, el 19 de septiembre de 2025, el foro administrativo emitió una *Orden* mediante la cual concedió un término de diez (10) días a la Junta de Directores, para que notificara su contestación a la dirección de correo electrónico de la señora Piñeiro Díaz. A su vez, declaró *no ha lugar* a la solicitud de anotación de rebeldía instada por la señora Piñeiro Díaz y notificó a las partes una citación de vista administrativa mediante videoconferencia para el 9 de diciembre de 2025.

El 24 de octubre de 2025, la Junta de Directores presentó su *Oposición a Tercera Moción Reiterando Solicitud de Anotación de Rebeldía; Oposición Moción Orden Contra la Parte Querellada por Incumplimiento y Nueva Solicitud de Sanciones y Anotación de Rebeldía.* Aseveró que, contestó la querella dentro de un término razonable y conforme a los requisitos reglamentarios aplicables. Además, sostuvo que compareció oportunamente al procedimiento y demostró su disposición de atender la controversia, por lo que no procedía la anotación de rebeldía.

Luego de varias incidencias procesales, incluida la celebración de la vista administrativa, el 24 de marzo de 2026, el DACo emitió la *Resolución* recurrida. Mediante el referido dictamen, el foro administrativo declaró *no ha lugar* a la querella de epígrafe y ordenó a la señora Piñeiro Díaz el pago de $500.00 por concepto de temeridad. Fundamentó su determinación en que las convocatorias impugnadas cumplieron sustancialmente con los requisitos legales y concluyó que la señora Piñeiro Díaz tuvo pleno conocimiento de las reuniones convocadas y de los asuntos a discutirse en ellas. En

consecuencia, razonó que la señora Piñeiro Díaz no estuvo impedida de asistir, comparecer mediante un representante autorizado o excusar su incomparecencia. Así, concluyó que, al no asistir a las asambleas impugnadas, la señora Piñeiro Díaz incumplió con los requisitos jurisdiccionales establecidos en el Artículo 65 de la Ley de Condominios, *supra*, para impugnar los acuerdos adoptados

En desacuerdo, el 7 de abril de 2026, la señora Piñeiro Díaz presentó una *Moción de Reconsideración y Solicitud de Determinaciones de Hecho y Derecho Adicionales*. De igual forma, presentó una *Moción Suplementaria de Reconsideración y Solicitud de Determinaciones de Hechos y Derecho Adicionales* y, el 14 de abril de 2026, instó una *Segunda Moción Suplementaria de Reconsideración*. Por su parte, el 17 de abril de 2026, la Junta de Directores presentó su *Oposición a Moción de Reconsideración y Solicitud de Hecho y Derecho Adicionales*.

Ese mismo día, el DACo emitió una *Resolución en Reconsideración* mediante la cual declaró *no ha lugar* a la solicitud de reconsideración instada por la señora Piñeiro Díaz y mantuvo en vigor la *Resolución* emitida el 24 de marzo de 2026.

Inconforme aun, el 18 de mayo de 2026, la señora Piñeiro Díaz recurrió ante este foro revisor mediante recurso de *Revisión Administrativa* señalando los siguientes errores:

> **PRIMER ERROR**: Cometió error el DACO y resolvió contrario a derecho al desestimar la querella y al validar las asambleas y la Junta de Directores sin que se hubiera cumplido el proceso de transición exigido por el Artículo 35 de la Ley Núm. 129-2020 ya que el DACO resolvió el contrario a derecho al emitir resolución contraria a la Situación Procesal de que el Desarrollador tenía que hacer la entrega a un Comité de Transición, violentando el debido proceso de ley de la querellante, todo esto sin haber encontrado en rebeldía a la parte querellada por sus incumplimientos.

> **SEGUNDO ERROR**: Cometió error el DACO al determinar cómo hechos incontrovertidos meras alegaciones de la parte querellada y emitir remedio basado en esas alegaciones, que no se sustentan con

prueba que se encuentre en el expediente administrativo.

**TERCER ERROR**: Cometió error el DACO y resolvió contrario a derecho al validar las asambleas y los acuerdos adoptados sin verificar la legitimación activa de los firmantes ni la notificación adecuada de las convocatorias, contraviniendo los plazos y requisitos de la Ley Núm. 129-2020.

**CUARTO ERROR**: Cometió error el DACO y resolvió contrario a derecho al emitir resolución contraria a la Situación Procesal, violentando el debido proceso de ley de la querellante, mediante Pasión, prejuicio y parcialidad del Examinador.

**QUINTO ERROR**: Cometió error el DACO y resolvió contrario a derecho al imponer a la querellante una sanción de $500.00 por temeridad, cuando la querellante ha sido diligente durante años, presentó evidencia sustancial y tiene justa causa para sus ausencias.

A tenor con la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025), este Foro Foro puede "prescindir de términos no jurisdiccionales, específicos," escritos, notificaciones o procedimientos adicionales, "con el propósito de lograr su más justo y eficiente despacho…". Ante ello, prescindimos de la comparecencia de la parte recurrida.

**II.**

**A.**

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Katiria´s Café v. Mun. de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. A.R.P$_E$*, 167 DPR 684, 693 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un

abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida.[2]

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008). Véase, además, *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Capó Cruz v. Jta. Planificación, et al.*, 204 DPR 581, 591-592 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[3] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Véase también, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000). En cuanto a las conclusiones de derecho, la LPAU dispone que: "serán revisables en todos sus aspectos por el tribunal".

Empero, debemos puntualizar que, aunque nuestro más Alto Foro ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y

---

[2] Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 892.

[3] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, *supra*, pág. 728.

respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente, dicha consideración por parte de los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025).

En consonancia con lo anterior, el Tribunal Supremo de Puerto Rico, haciendo eco a las palabras del Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), determinó en *Vázquez et al. v. DACo, supra*, que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales y enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU.

Asimismo, el Tribunal Supremo de Puerto Rico expresó en *Vázquez et al. v. DACo,* supra, que:

> [A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial.

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotarla. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *García Reyes v. Cruz Auto Corp., supra*, pág. 893; *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

La Ley Núm. 129 de 16 de agosto de 2020, según enmendada, conocida como la *Ley de Condominios de Puerto Rico*, 31 LPRA secs. 1921 *et seq.*, se aprobó con el propósito de viabilizar la propiedad

individual sobre un apartamento, que forma parte de un inmueble sometido al Régimen de Propiedad Horizontal, de manera que cada titular tenga el pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades. 31 LPRA sec. 1921a. En su Exposición de Motivos, el estatuto también hace referencia a que este se aprobó con el propósito de establecer un régimen jurídico que facilitara la vida en convivencia y propiciara la disponibilidad de viviendas en un área restringida de terreno. *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025). Véase, además, Exposición de Motivos de la Ley de Condominios, *supra.*

En miras a la consecución de su propósito, la Ley de Condominios, *supra*, contempla la convergencia de diversos actores en el manejo del Régimen de Propiedad Horizontal. Entre estos se encuentra la figura del Consejo de Titulares y el Agente Administrador. La Ley de Condominios, *supra*, define el primero como el "[ó]rgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares", mientras que el último es aquella "[p]ersona designada por el Consejo de Titulares para administrar la operación diaria del condominio, bajo la supervisión del Director o la Junta de Directores". 31 LPRA sec. 1921b.

Así pues, el Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal. 31 LPRA sec. 1922t. Conforme a ello, sus resoluciones y acuerdos serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio, siempre y cuando hayan sido adoptados en asambleas debidamente convocadas y constituidas. *Íd.*

El Consejo de Titulares posee, por virtud de ley, ciertos poderes y deberes, entre los cuales se destaca la facultad para aprobar el presupuesto anual y los estados financieros anuales, así como para intervenir y tomar decisiones sobre asuntos de interés general, y tomar aquellas medidas necesarias y convenientes para mejorar el servicio común. 31 LPRA sec. 1922u.

De otra parte, el Artículo 65 de la Ley de Condominios, *supra*, permite que las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador, así como los acuerdos del Consejo de Titulares, puedan ser impugnados. 31 LPRA sec. 1923j. En el caso de los titulares que sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor. *Íd.* Sobre la impugnación, dispone textualmente el referido artículo que:

> [...]

> El titular que quiera impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares y que entregó copia del documento mediante el cual adquirió su apartamento a la Junta de Directores. Será excepción al requisito de no deuda, cuando la impugnación sea para cuestionar la deuda que alegadamente tiene. **En el caso de la impugnación de acuerdos del Consejo de Titulares tendrá que acreditar que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada**.

> *Íd.* (Énfasis nuestro).

### III.

Por su estrecha relación, discutiremos de forma conjunta los primeros cuatro errores señalados por la parte recurrente.

En su primer señalamiento de error, la señora Piñeiro Díaz sostiene que incidió el DACo al desestimar la querella y, en consecuencia, validar las asambleas y la Junta de Directores sin que

se hubiese cumplido previamente el proceso de transición requerido por el Artículo 35 de la Ley de Condominios, *supra*. Aduce que dicha disposición es clara y taxativa al establecer que, antes de celebrarse cualquier asamblea de transición, el Administrador Interino debe entregar al Comité de Transición determinada documentación relacionada con el condominio. Señala que, en el presente caso, la Junta de Directores reconoció expresamente que el proceso de transición nunca se llevó a cabo y que tampoco recibió los documentos exigidos por ley. Por ello, sostiene que, al no haberse completado dicho proceso, carecen de validez tanto la Junta de Directores constituida como las asambleas celebradas.

En su segundo señalamiento de error, la parte recurrente aduce que, el foro administrativo erró al determinar como hechos incontrovertidos meras aseveraciones formuladas por la Junta de Titulares y fundamentar su determinación en alegaciones que, a su juicio, no estaban sostenidas por prueba que obre en el expediente administrativo.

Por su parte, en su tercer planteamiento de error, la parte recurrente arguye que, el DACo incidió al validar las asambleas y los acuerdos adoptados sin corroborar la legitimación de las personas que los suscribieron, ni el cumplimiento de los requisitos de notificación establecidos en la Ley Núm. 129-2020. En particular, sostiene que las convocatorias se realizaron exclusivamente mediante mensajes de *WhatsApp* y carteles, sin notificación escrita ni correo certificado, según exige el reglamento interno del condominio y el Artículo 50 de la Ley de Condominios, *supra*. Añade que impugnó formalmente dichas convocatorias mediante carta del 15 de mayo de 2025, en la cual advirtió que el reglamento interno no autorizaba la notificación exclusiva por *WhatsApp* y que varias de las personas firmantes no figuraban como titulares en los registros correspondientes. Asimismo, señala que la parte recurrida

admitió durante la vista administrativa que, al momento de cursar las convocatorias, no contaba con las escrituras de los titulares ni con un registro actualizado de estos. A su juicio, tales circunstancias invalidaban los acuerdos adoptados en las asambleas impugnadas.

Finalmente, la parte recurrente sostiene que el DACo actuó contrario a derecho al emitir una determinación incompatible con la situación procesal del caso y que ello constituyó una violación a su debido proceso de ley, producto de la alegada pasión, prejuicio y parcialidad del examinador. *Veamos.*

De entrada, es menester puntualizar que, luego de un examen detenido de los planteamientos de la parte recurrente y el expediente ante nuestra consideración, concluimos que no se cometieron los errores señalados.

En primer lugar, surge de la *Resolución* recurrida que el DACo concluyó que la parte recurrente tuvo conocimiento de las convocatorias impugnadas y de los asuntos que serían considerados en las respectivas asambleas. De hecho, la propia parte recurrente reconoce haber recibido las convocatorias, haberlas examinado e incluso haberlas impugnado previo a la celebración de las reuniones. Sin embargo, no compareció a ninguna de las asambleas cuya validez ahora cuestiona, ni participó mediante representante autorizado, ni demostró que su ausencia estuviera justificada. Así, lo declaró el foro administrativo en su determinación al expresar que: "No pasemos por alto que la propia querellante [la señora Piñeiro Díaz], en la vista administrativa y bajo juramento admitió que no envió un alegado poder notarial a la parte querellada [Junta de Titulares] por entender que la asamblea del 18 de mayo de 2025 era contraria a lo ordenado por el DACo…".[4]

---

[4] Véase *Resolución* recurrida.

A esos efectos, el Artículo 65 de la Ley de Condominios, *supra*, establece unos requisitos jurisdiccionales para la impugnación de los acuerdos adoptados por el Consejo de Titulares. Entre ellos exige que el titular acredite que estuvo presente en la asamblea y que hizo constar su voto en contra del acuerdo impugnado o, en el caso de ausencia, que la misma haya estado justificada. Sin embargo, conforme determinó el foro administrativo la señora Piñeiro Díaz no satisfizo tales requisitos. Por consiguiente, independientemente de los cuestionamientos que formula respecto al proceso de transición, la legitimación de determinados participantes o los mecanismos de notificación utilizados, carecía de legitimación para impugnar los acuerdos adoptados en las asambleas en controversia.

En segundo lugar, tampoco advertimos fundamento para descartar las determinaciones de hechos realizadas por el foro administrativo. Cabe señalar que el DACo celebró una vista administrativa en la cual recibió la prueba presentada por ambas partes y tuvo la oportunidad de evaluar directamente la credibilidad de los testigos y el valor probatorio de la evidencia sometida ante su consideración. Como foro revisor, nuestra función no consiste en sustituir el criterio de la agencia por el nuestro. Por el contrario, las determinaciones de hechos de una agencia administrativa gozan de una presunción de corrección y deferencia, particularmente cuando descansan en la apreciación de la prueba desfilada durante la vista administrativa. La parte recurrente no nos ha colocado en posición de concluir que tales determinaciones son arbitrarias, caprichosas o carentes de apoyo sustancial en el expediente.

Finalmente, tampoco nos persuade el argumento relacionado con la alegada falta de celebración del proceso de transición. Según surge de la determinación recurrida, el foro administrativo consideró que el término dispuesto en los procedimientos previos para llevar a cabo dicho proceso había transcurrido sin que este se materializara.

Ante esa realidad procesal, y considerando las circunstancias particulares del caso, el DACo concluyó que ello no impedía la celebración de las asambleas, ni invalidaba automáticamente los actos realizados por la Junta de Directores. De hecho, consideró además que la propia Ley de Condominios, *supra*, en su Artículo 33, 31 LPRA sec. 1922e, dispone que, "[e]l traspaso de la administración se efectuará tan pronto los titulares elijan al Director o a la Junta de Directores en una reunión extraordinaria **que podrá ser convocada en cualquier momento por cualquiera de los titulares de los apartamentos individualizados** [...]". Por tanto, la parte recurrente no ha demostrado que dicha conclusión constituya un error de derecho o una actuación arbitraria por parte del DACo.

De otra parte, la señora Piñeiro Díaz aduce que cometió error el foro administrativo al imponerle una sanción de $500.00 por temeridad cuando fue diligente durante años, presentó evidencia sustancial en todas sus mociones y tuvo justa causa para sus ausencias. Manifiesta que imponer una sanción económica a una persona *pro se*, incapacitada y de escasos recursos, que ha mantenido el condominio con su propio dinero y esfuerzo constituye un abuso de discreción y viola el debido proceso de ley.

Como es bien sabido, nuestro derecho procesal civil le concede al foro de instancia la facultad para imponer el pago de honorarios de abogado a la parte litigante que obró de forma temeraria o frívola. Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R.44.1(d); *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 145 (2022). Es decir, cuando existe temeridad, la imposición de honorarios a dicha parte es obligatoria. *Blás v. Hosp. Guadalupe,* 146 DPR 267, 334 (1998). Ahora bien, en los casos en que se imponga honorarios de abogados, la cuantía concedida no variará en la apelación a menos que esta sea excesiva, exigua o haya constituido un abuso de la discreción del tribunal apelado. *Andamios de PR v. Newport Bonding,* 179 DPR

503, 520 (2010); *Ramírez Anglada v. Club Cala de Palmas*, 123 DPR 339, 350 (1989).

De otra parte, la Ley 38 de 30 de junio de 2017, según enmendada, también conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, proveyó para que las agencias, al ejercer sus funciones cuasi judiciales, pudieran imponer costas y honorarios de abogados, en las mismas circunstancias dispuestas bajo la Regla 44 de Procedimiento Civil. 3 LPRA sec. 9661c. A su vez, la propia Ley de Condominios, *supra*, dispuso que el foro en el que se diluciden las querellas presentadas por los titulares le impondrá a la parte que hubiese procedido con temeridad el pago de costas y honorarios de abogado. 31 LPRA sec. 1923j.

Luego de un análisis objetivo, sereno y cuidadoso del recurso ante nuestra consideración, a la luz de las normas jurídicas pormenorizadas, resolvemos que no se cometió el error señalado. Al ser discrecional la facultad de imponer honorarios por temeridad, este tribunal reitera su posición de no intervenir con la apreciación que realizó el foro administrativo. Esta sanción es producto de la totalidad del expediente administrativo y del proceder de la señora Piñeiro Díaz en la tramitación del caso.

Surge de la determinación recurrida que, en los expedientes de las querellas previamente atendidas por el DACo no existía notificación alguna de la señora Piñeiro Díaz informando que, el 23 de febrero de 2025, se había constituido la Junta de Directores en una asamblea ordinaria. Asimismo, consignó que la señora Piñeiro Díaz esperó casi dos (2) años para solicitar el cumplimiento de la orden emitida en las querellas previas, pese a haber sido apercibida de que contaba con treinta (30) días, luego de vencido el término concedido al querellado, para informar sobre cualquier incumplimiento, so pena de decretarse el cierre y archivo del caso.

También pesó en el criterio de la agencia el hecho de que la parte recurrente no compareció, por ningún medio, a la asamblea celebrada el 23 de febrero de 2025. Sin embargo, ante su inconformidad con lo allí acontecido, acudió al DACo apenas cuatro (4) días después para presentar, por primera vez, un escrito en solicitud del cumplimiento de la orden emitida por el foro administrativo. Así, la conducta de la señora Piñeiro Díaz movió al foro administrativo a que adoptara dicha determinación. Ante la ausencia de una determinación irrazonable y, toda vez que la cuantía de $500.00 impuesta no nos parece excesiva, no intervendremos con la decisión del foro administrativo.

En suma, revisadas las conclusiones de derecho del DACo en todos sus aspectos, colegimos que la parte recurrente no logró derrotar la presunción de corrección que ostentan las decisiones administrativas, ni tampoco nos persuadió a alejarnos de la norma de deferencia que estas merecen. La decisión de la agencia fue razonable y se dictó bajo el marco doctrinal adecuado. En consecuencia, confirmamos la *Resolución* impugnada.

**IV.**

Por los fundamentos expuestos, se confirma el dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones